And we'll turn to number 20-1879, Bello, B-E-L-L-O, versus Raccoon County, et cetera. Good afternoon, your honor. Yes. Go ahead. Thank you. Good afternoon. My name is Amy Bellantoni, and I represent Robert Bello, the plaintiff below. Let's speak to the court. This case involves the rights of a third-party owner of firearms to recover their property from the police. The district court's opinion and order should be reversed in its entirety. In dismissing the 14th Amendment due process claim, the court incorrectly placed the burden on Mr. Bello to pursue his remedies in state court. Now, this circuit announced in Tanzella v. Sposato, 863F3-210, that where the police placed the burden on the property owner to spend time and money trying to recover their property from state court remedies, there is a significant risk of erroneous deprivation under the Matthews Act. And the circuit court held that the county must provide a prompt post-deprivation hearing by a neutral arbiter or hearing officer to challenge the county's retention of the property when the county refuses to return such property. Here, Mr. Bello had requested the return of the property with handguns that were registered to his New York State pistol license. And the county refused to return the property and thereafter never proceeded any further. It was just a blanket refusal. They never proceeded toward a hearing to challenge their own decision before a neutral hearing officer. Now, even if the deputies that had seized the handguns from Mr. Bello's mother, even if those deputies had reason to believe that that seizure was lawful based on Judge Walsh's suspension order that pertained only to Mr. Bello's mother, resulting from the report under Mental Hygiene Law, Section 9.46, the sheriff and Mr. Samedi have no legal grounds to retain the firearms and they are knowingly and intentionally violating Mr. Bello's 14th and 14th Amendment rights. First of all, there is no order to enforce. Judge Walsh's suspension order was directed solely at Mrs. Bello and was requiring her to turn over her handguns based on Judge Walsh's suspension of her pistol license. Second, Judge Walsh's suspension order to Mrs. Bello was not directed in any form to the sheriff's office. It was not a seizure order. It did not direct the sheriff's office to take any action. It was not a search warrant. There was no retention order in Judge Walsh's letter to Mrs. Bello. So there was no basis, there was no requirement that the sheriff's office take any action at all. The suspension notice sent to Mrs. Bello simply required her to turn her handguns that were to the sheriff's office. Even if there was, even viewing Judge Walsh's letter and suspension notice as a judicial order, once the handguns were surrendered to the sheriff's office, there was nothing to enforce. So currently the sheriff and Mr. Samedi's retention of Mr. Bello's property is unlawful because while they claim that they're enforcing a judicial order, there is no order to enforce all of the terms of the letter sent to Mrs. Bello from Judge Walsh have been met. So the district court erred in granting the sheriff and Mr. Samedi absolute judicial immunity. Further, Judge Walsh's suspension order was discretionary. It was not discretionary. It was a ministerial act because Judge Walsh as licensing officer is required to either the pistol license of an individual who has been the subject of a 9.46 report. He has no discretion over that. And being a ministerial act removes the absolute quasi-judicial immunity defense for the sheriff and for Mr. Samedi. Furthermore, as far as the Monell claim, it was erroneous for the district court to dismiss such claim because the complaint clearly alleged that there was a policy and procedure followed by Rockland County that when an individual is seeking the return of their firearm, that the sheriff's office requires them to commence an article 78 proceeding on their own, which as I've already discussed is completely contrary to the holding in Panzella. And based on the foregoing, I would ask that this court reverse the district court's decision in its entirety. Thank you, Ms. Bellantoni. Any questions, Judge Kearse? Yeah, I have a question. Does the firearms license itself indicate that the firearms, the covered firearms are co-owned by another person? The face of the New York state pistol license itself is not. The back of the license indicates which handguns are registered on the license to the licensee, but there is no indication of co-ownership. However, the sheriff's office has the technology and the ability to ascertain whose pistol license the handguns are registered to because they're registered under their serial number as well as the make and model of the handgun. So by inquiring, you know, tracing the serial number or even just putting in the individual's name, they would be able to ascertain that they were co-owned by Mr. Bellow and his mom. Okay, thank you. Judge Pooler. Thank you. Following up on Judge Kearse's question, if they were co-owned by Mr. Bellow and his mother, didn't the sheriff do exactly what the order required him to do? The order was directed solely at Mrs. Bellow requiring her and actually giving her 48 hours to surrender the handguns that were on her pistol license to the sheriff's office. Now, as an aside, her pistol license had expired a year before these events took place. But assuming that the deputies were acting in good faith and going to her house to collect the fire or the handguns, you know, I could see that it would be reasonable for them to believe that they had a valid order in front of them. However, the focus here is the sheriff himself who has personal involvement in making the decision not to give the guns back to Mr. Bellow and his counsel who also was co- I guess making the decision together with the sheriff in deciding that there was still a valid order to enforce. Just to be clear, there is no present order that requires the sheriff's office to retain these handguns. And this is very important because this is not an uncommon situation with law enforcement agencies that remove firearms and then are approached by a third party co-owner or someone who has no prohibitors to the return of the firearms, as in the case of long guns, and they just simply refuse to return the firearms, even though there is no order requiring them to retain them. There's no criminal proceeding where they'd be considered evidence in such proceeding that they can't return them. And there's no legal prohibitor for the return of the firearms. Where there is no legal basis to retain personal property, private property, the government must give it back. Right. So I take your answer to be yes, that Mr. Bellow was a co-owner with his mother of the guns in question?  Yes, ma'am. Although Mrs. Bellow had no right to physically possess them, and she, in fact, did not physically possess them. They were in Mr. Bellow's locked safe, and she had no legal ability to physically possess them because she had no valid New York state pistol license and had expired a year before. Thank you. I have no further questions. Ms. Bellantoni, this is Judge Cabranes. Just to make sure that I understand the state of the record, you concede that the initial seizure of the firearms was proper. Is that correct? I know that there was a reference from the district court in the record that that was conceded or that those claims were no longer being pursued. And I know the state of the law in the Second Circuit with regard to Fourth Amendment claims and, you know, failure to challenge the initial seizure. I will say that Mr. Bellow challenged the seizure at the time in his home of the firearms because they were in his locked safe, and there was no basis for the seizure to take place because Mrs. Bellow's license had expired. I can reasonably see that the deputies thought they were doing their job in collecting the property. So there was a challenge by Mr. Bellow at the scene, but in that respect, I could see where the deputies themselves, not the sheriff and Mr. Semeny, but the deputies themselves would be entitled to qualified immunity on that ground. That was the concession that was being made below. I see. But in any event, the only thing you're challenging at this point is the retention of the firearms, right? Yes, Judge. I am challenging the retention of the firearms, and I would urge the court to reconsider the issue of Fourth Amendment violations in that context when there is a third-party owner involved. But let me ask you, if in fact your objective is to challenge the retention of the firearms, why not seek an amendment to the surrender order or other relief from Justice Walsh or from the New York appellate courts? Right. So as I had indicated, the Second Circuit has held that the burden is not on the property owner to seek a remedy in state court. The burden is on the government, and that was in the Pandela case, to either return the property or to initiate a hearing in front of a neutral arbiter or hearing officer. And second, Mr. Bellow has no standing to challenge a suspension order from Judge Walsh that applied to his mother. So there would be no avenue for him to initiate a proceeding in state court because there's no basis for him to challenge that order. And that order is no longer in existence because it's not a retention order. It simply ordered Mrs. Bellow to surrender the handguns, and that's been accomplished. So he'd be challenging, essentially challenging a melody. The orders didn't order the sheriff's office to do anything, but it certainly didn't order them to continue to retain the handguns. All right. Bar to the return. Yes. Hold it. Hold it, please. You've answered fully, and I appreciate it, but let's catch our breath here. So if we assume the initial seizure of the property was reasonable, or at least that it's not being disputed, well, let's assume that the initial seizure of the property was indeed reasonable. That's the operating assumption of this hypothetical. Is there any case law that would enable us to find a fourth amendment violation in the first place? That is, would we be in a position to revisit that question? I would urge the court to specifically... I'm not aware of case law at this moment that talks about, that absolves the fourth amendment issue where there is a third party owner. Because even in cases involving forfeitures of cars and other property by the New York City, the cases escape me at this moment. But even those cases speak to, even though there's an innocent third party owner, because the initial seizure was proper, which it was from the actual defendant, it was proper from the defendant. It was proper to seize them on its face from Mrs. Bellow, because her license was on its face suspended, even though expired. The holdings in those cases, in that line of cases, is that there was only a 14th amendment violation to be pursued, that the fourth amendment is not able to be pursued as a violation. I would urge the court to reconsider that though, in the context of an innocent third party owner, or as here, a co-owner of firearms when they're challenging the return of their firearms. Because while there is a 14th amendment violation here for the due process issue, there still is a very substantive fourth amendment violation vis-a-vis Mr. Bellow. They're holding his property. All right, let's hear now from Mr. Weisman. Good afternoon, Your Honor. May it please the court, Robert Weisman for Appellates Rockland County, Falco, and Semedi. The decision of the district court should be affirmed. Excuse me. As you just heard, the appellate has conceded the propriety of the initial seizure, so there is no fourth amendment issue before the court. The only issue here is whether proper notice was given for the 14th amendment due process purposes. Here, as in the Bennett decision that the court rendered just six months ago, the appellant had the required notice based on Justice Walsh's order, and subsequently amplified by Mr. Semedi's January 18th letter. He knew the guns were taken. He knew who took them, and he knew why they were taken. This is all that the law requires, as explained by this court in Bennett. The letter to the sheriff, which acknowledges that Mr. Bellow had notice of all of these things, did not change the reason for the seizure. Lori Bellow was still the subject of the Mental Hygiene Law 946 report. The guns were still on her pistol permit, valid or not, renewed or not, they were on her pistol permit, and they were still subject to the order. Sheriff still had a duty to obey that order. The appellant wants to turn the Rockland County Sheriff's Department into an arm of the appellate division. If something doesn't work that way, only a judge can vacate or modify an order issued by a judge. The issues that the appellant raises here regarding the continuing validity of the permit and co-ownership should have been brought to Justice Walsh or to an appellate court, not to the Rockland County Sheriff's Department. The law regarding the notice required for 14th Amendment purposes is quite clear, and the Sheriff's Department doesn't have a duty to provide double due process. The continued retention is not a separate issue. Once the appellant has notice of who took the guns and why, as he admits he did, it's up to him to take proper action to get the order vacated. Why the appellant did not go to Justice Walsh or just simply remove the guns from Lori Bello's pistol permit, which would have removed them from the scope of Justice Walsh's order, is not clear, but the fact is, it's not the Sheriff's Department's job to give legal advice as to how to go about vacating orders. As to quasi-judicial immunity, as explained in the Aaron case cited in our brief, the  is to be construed broadly, and in this case, the entire authority of Justice Walsh to make decisions concerning pistol permits is by virtue of Penal Law 265-10, which states in Rockland County, only judges can be pistol licensing officers. Therefore, his authority stemmed from his role as a judge. It was issued on court letterhead, and this was an order that the Sheriff's Department had a duty to obey. Sheriff's Department can't simply reverse the judge's order. The concept that the order ceased to exist is simply incorrect. There was no sunset provision in the order. There's no statutory vacator time period, and therefore, the reference to Panzella is in a process. Panzella dealt with a temporary restraining order that expired, and in that case, there was no provision as to how to go about returning guns in the absence of an order. In this case, the distinction is that there is an order, and the process is already provided for by law. He was given the notice. It was up to him to take appropriate action with Justice Walsh. So therefore, quasi-judicial immunity should apply. And then for that same reason, because the Cacuzza case cited in the complaint deals with an issue of a non-judicial order situation, the Monell argument is also incorrect. The entire process, the policy, the plaintiff's claims existed did not deal with a situation like this, where a judicial order is in effect. So the complaint does not plausibly plead a Monell policy, even if there could be established a 14th Amendment or 4th Amendment violation, and it cannot. Does the court have any questions for me? Judge Keirs? Yeah, where in any of the statutes or regulations would we find provisions as to what a co-owner of firearms can follow to retrieve his or her property? I don't know if it is in a statute or regulation per se, but certainly as a purported owner of the property, he is aggrieved by the order. His property has been seized, and he has standing to go before Judge Walsh and say, you know, this is my property. I am aggrieved by your order. There are cases dealing with people who are not the subject of the statute, and they are of an order, but who are nonetheless affected by it and are considered aggrieved parties for appellate purposes and for jurisdictional purposes. Do any of the legal provisions deal with co-ownership of firearms? I do not believe that there is anything specifically defining co-ownership or dealing with remedies of a co-owner as distinguished from an owner. Nonetheless, of course, the order specifically applies to co-owners. It directed Lori Bellow to turn over any weapons you own or co-own or are which listed on your permit. That is A55 of the record in the second paragraph. So Justice Walsh's order applied to these guns regardless, and Mr. Bellow is, as a co-owner, aggrieved by it and has standing to challenge the order. Thank you. Judge Pooler. Yes, thank you. Counsel, you suggested that one of the remedies that Mr. Bellow could have pursued was getting his name and the guns out of his mother's purview, getting her name off the permit. How easy is that to do? Well, he would have to do that in conjunction with her. The guns were still listed on her permit. Theoretically, according to his affidavit, they were transferred to his possession. I don't know. The affidavit doesn't specify if she sold them, if she gifted them, however it was. But apparently, according to Mr. Bellow, they were transferred to his possession, and she has an obligation to go and remove them from her pistol permit. But certainly, as the new owner, he could go and inform the pistol clerk that they had been sold to him, provide an affidavit from his mother, the same type of affidavit he provided to the sheriff, say these guns have been sold to me, gifted to me, whatever it is, and have his mother sign it and her signature notarized. And then just present it to the sheriff? No, present it to the pistol licensing clerk in the department. He already has a pistol license, correct? He does, yes. He would have to add these particular guns to his license, is that correct? Well, those guns were also on his license. They appeared on both. They appeared on his mother's pistol license, and the same guns appeared on his own pistol license. So really, all he would have to do is remove these guns from his mother's expired license, is that correct? Correct, correct. And that would remove them from the scope of Justice Walsh's order, which directed the surrender of any pistols listed on her permit. But wasn't her expired license a nullity since it had expired, actually? Did it still have any force in effect? Justice Walsh's order doesn't distinguish between a valid or an invalid pistol permit. The fact is that they were still on record with the pistol licensing clerk. There's actually a copy of the printout from the pistol licensing clerk in the Record on Appeal, pages 62 and 63 of the Record on Appeal, printouts from the day of Justice Walsh's order and from shortly after receipt of Ms. Bellantoni's letters to the Sheriff's Department showing the guns that are listed on Lori Bellantoni's permit. So whether it's valid or not, Justice Walsh's order directed the surrender of the guns on her permit. And that's what the Sheriff had an obligation to collect from her. The Sheriff is not in any position to make fine legal distinctions as to what Justice Walsh meant and try and interpret whether he meant an expired permit or an unexpired permit or anything else. The language just said her permit. They looked up what was on the pistol permit and they went and collected those guns as per the orders directive. Thank you. I have no further questions. Thank you very much. Ms. Bellantoni, you've reserved some time. You could probably do it in one minute rather than three because I gave you some extra time originally. Thank you. Thank you, Judge, so much. And I don't anticipate needing three minutes. I would just clarify that one cannot amend an expired pistol license. And it cannot be done through the clerk's office. Technically, an amendment is filed through the clerk's office, but the amendment would need to be filed with the Sheriff's office and sent to the licensing judge to amend the pistol license. But here, there is no pistol license to amend. So they de facto could not have removed the handguns from her license because there was no license to remove them from. And there was much discussion about the initial seizure and the reasonableness of the seizure of the handguns, which we've gone over. But the issue here really is the continued retention of the handgun. And looking at that from the position of a person in Mr. Bellow's position and being the sheriff and considering Mr. Bellow himself, is there a legal ground to retain this property, these handguns from Mr. Bellow, who has all of these handguns listed on his valid New York State pistol license and who has no prohibitors to the possession of such firearms? Is there a legal basis to continue to retain them? The answer is no. Judge Walsh's order did not apply to Mr. Bellow. Judge Walsh's order did not require the Sheriff's office to retain the property. And his letter can be found at the record in appendix 855. Very clear. But it does require the Sheriff's office to seize them. It. No, it does not. It does not. The letter requires Mrs. Bellow to surrender her pistol license and the handguns that are listed on the pistol license. And it gave her 48 hours to surrender those handguns. Well, it does not require. Doesn't it implicitly require the Sheriff's department to receive those those guns that are required to be turned over? No. To the Sheriff's department. It requires Mrs. Bellow to turn her property over to the Sheriff's office. It's not ordering the Sheriff's office to do anything. If they agree to take them and hold them, then as the licensing, you know, police agency affiliated with the licensing officer in Rockland County, then they could take possession of those guns. But they could have just rejected in your view. That would have been another another issue for another day. But I don't know if any legal I mean, as the arm of the licensing officer, they work in conjunction traditionally with the licensing officer. But Mrs. Bellow was required by the penal law. Section 400 of Section 11 B and C that the penal law required her surrender of the firearm. Surrender. It didn't nothing directs any law enforcement agency to feed them. Thank you. So if she had if she had surrendered them to a private gun store, they would have held them until she had a valid license because her license was suspended and removed. They would have held them and would have had to uphold them until she had a valid license to be able to retrieve them. Counselor, she could have sold these or given these to her son, couldn't she? That's what we just heard from opposing counsel. She and at what point respectfully, Your Honor, after they had been surrendered to the Sheriff's office? Yes. She could have she could have transferred them to a gun store for for a private sale through the gun store. But that was unnecessary because her son already owned them and he had owned them for numerous years. They've been on his pistol license for years, but that can't take place unless the sheriff releases the property. Thank you, Miss Bellantoni. Thank you so much. Thank you. Reserved decision in 20-1879.